UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| JAMES E. VOLLMER,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED SEATING AND MOBILITY, L.L.C. d/b/a NUMOTION; ATG-COLORADO, INC. d/b/a NUMOTION,<br><br>Defendants. | Civ. No. 20-__5082__<br><br>**COMPLAINT AND JURY DEMAND** |

COMES NOW Plaintiff James E. Vollmer, by and through his counsel of record, for his Complaint and causes of action against Defendants United Seating and Mobility, L.L.C., doing business as Numotion, and ATG-Colorado, Inc., doing business as Numotion, (collectively "Numotion" or "Defendants"), states and alleges as follows:

### PARTIES

1. Plaintiff James E. Vollmer, ("James") is, and at all times relevant to this action was a citizen and resident of Piedmont, Meade County, South Dakota.

2. Defendant United Seating and Mobility, L.L.C. ("United"), is Missouri Limited Liability Corporation with a principal place of business located in Hazelwood, Missouri. United transacts business globally, across North America, and in South Dakota under the business name "Numotion." Upon information and belief, at all times relevant to this action, United transacted business as Numotion in Rapid City, Pennington County, South Dakota.

3. Defendant ATG-Colorado, Inc. ("ATG") is a Connecticut Corporation with a

principal place of business located in Rocky Hills, Connecticut. ATG transacts business globally, across North America, and in South Dakota under the business name "Numotion." Upon information and belief, at all times relevant to this action, ATG transacted business as Numotion in Rapid City, Pennington County, South Dakota.

4. Defendants collectively are registered to do business under the laws of South Dakota as Numotion.

5. At all relevant times herein, Numotion sold, distributed, leased, prepared, labeled, inspected, assembled, tested, and/or maintained the subject wheelchair provided to James, by and through its agents and/or employees.

6. At all relevant times herein, Defendants failed to warn, and/or inadequately warned, James of the dangers and/or hazards associated with the use, misuse, or unintended use of the subject wheelchair as sold, lent, leased, distributed, prepared, inspected, assembled, tested, and/or maintained by Defendants.

## JURISDICTION AND VENUE

7. This District Court has original jurisdiction over this matter under 28 U.S.C. § 1332(a)(1) because this case involves a dispute by and between citizens of diverse states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in the United States District Court for the District of South Dakota, Western Division, pursuant to 28 U.S.C. § 1391(b) because the Defendants do business within the District, the events giving rise to the claim occurred in the District, and Defendants are subject to personal jurisdiction within the District.

## GENERAL ALLEGATIONS

9. James incorporates the allegations in the preceding paragraphs as if fully set forth

herein.

10. James graduated from Rapid City Stevens High School in 2007 and enrolled at University of Jamestown, in Jamestown, North Dakota that fall.

11. James was a member of the University's football team.

12. In addition to playing football, James was a pole vaulter on the University's track team.

13. On December 1, 2010, James suffered a catastrophic injury while practicing pole-vaulting resulting in permanent paralysis to his lower body.

14. James underwent spinal cord rehabilitation therapy at Craig Hospital in Colorado in hopes of maximizing his recovery and regaining as much physical ability and independence as possible following his pole-vaulting injury.

15. James was provided a loaner wheelchair from Craig Hospital in February of 2011, until a personalized wheelchair arrived later that year.

16. The personalized wheelchair was a Quickie GT. The Quickie GT arrived later in 2011 and James used this wheelchair for 5-6 years as directed by staff at the Craig Hospital.

17. After using his Quickie GT for 5 to 6 years, James ordered a new wheelchair from Numotion, in 2016. The new wheelchair and the wheelchair that is the subject of this lawsuit is a Quickie 5R ("Quickie 5R" or the "new wheelchair"). The Quickie 5R arrived in approximately September of 2017.

18. James did not use the Quickie 5R exclusively upon arrival. Rather, as directed and trained by staff at the Craig Hospital, James eased into the wheelchair gradually while still using his old wheelchair on a primary basis. This transition period lasted for several months

until James was using the Quickie 5R more and more each day. By the end of November to early December of 2017, James was using the new wheelchair on a full-time basis.

19. After James began to use his new wheelchair on a full-time basis in late 2017 and into early 2018, he continued to take his new wheelchair to Numotion's facility in Rapid City for inspections, testing, repairs, adjustments, and maintenance. During the entire time period of owning the new wheelchair, James continuously relied on Numotion to properly inspect, test, adjust, repair, and maintain his new wheelchair, and he also relied on Numotion to warn James of the unreasonable dangers or risks of hazard associated with the use or misuse of his new wheelchair as delivered, assembled, inspected, tested, adjusted, repaired, and/or maintained by Numotion.

20. After using his new wheelchair for several weeks on a full-time basis, James started getting fevers and chills in January of 2018. James was injured on or about February 2018, in South Dakota, and sought treatment at Monument Health's wound care clinic for a pressure injury to his right hip later determined to be caused by his new wheelchair as a direct and proximate result of one or more of the Defendants' wrongful acts or omission or commission.

21. James relied on Numotion and trusted it to properly inspect, test, adjust, assemble, repair, and/or maintain his new wheelchair. Thus, after his injury in February 2018, James continued working with Numotion while he, his family, and doctors tried to determine the cause of his injury.

22. On or about February 27, 2018, James and his family, for the first time realized that there was pressure point on the bottom of the new wheelchair's cushion, which had caused

an indentation mark on the bottom of the cushion directly below James's right hip, where the pressure injury developed.

23. After James, his family, and a wound-care nurse realized his new wheelchair was the likely cause of his pressure injury, his family confronted Numotion. James's mother showed the indentation mark on the bottom of the cushion to Numotion staff. In response, Numotion made arrangements for specialists to be sent out from Daylight in Sioux Falls to assist Numotion in resetting up the new wheelchair and making cushion adjustments.

24. James and his family began to have reservations about Numotion and particularly whether Numotion was adequately investigating the root cause of James's injury. In their search for the root cause, James and his family had pressure mapping done on the new wheelchair by an independent third party, Lifescape, in October of 2018. James could not see Lifescape sooner because he was on bed rest from February to August of 2018.

25. After the pressure mapping was done, Lifescape staff immediately noticed "hammocking" issues associated with obvious improper assembling, adjusting, inspecting, and/or testing of the new wheelchair.

26. Despite his reservations about Numotion, James continued working with Numotion until the fall of 2018 when Numotion communicated with James regarding an appointment with a Sunrise representative.

27. Since his injury, James has returned to using his old wheelchair, the Quickie GT and his new wheelchair, the Quickie 5R remains stored in his garage. James simply does not trust the Quickie 5R wheelchair anymore.

28. As a direct and proximate result of Defendants wrongful acts of commission and omission, James incurred several surgeries, was required to be on full time bed rest for several

months with an open wound. Further, James almost died following one of the surgeries and had to be resuscitated. In addition, James lost a portion of his right buttocks causing a permanent loss and now has trouble bathing and toileting due to balance issues.

29. James will require ongoing issues and medical treatments as a result of this injury.

30. This injury has now impacted James's ability to sleep. In fact, James must set an alarm roughly every 3 hours while he is sleeping to wake up, remind himself to adjust his body, and actually adjust his body to avoid a return of the pressure sore in the same location.

## COUNT ONE—NEGLIGENCE

31. James incorporates the allegations in the preceding paragraphs as if fully set forth herein.

32. At all relevant times, Defendants owed James a duty to use reasonable care.

33. At all relevant times, Defendants breached their duty of reasonable care through acts of omission or commission, which collectively and severally, constituted negligence, and which were a direct and proximate cause of the pressure injury.

34. Defendants' negligence includes, but is not limited to:

   a. Failing to inspect and/or test to insure that the Quickie 5R and its component parts were in safe working order prior to use on a full time basis by James;

   b. Failing to inspect and/or test to insure that the Quickie 5R's seat cushion was adequately secured to the chair to prevent hammocking;

   c. Failing to conduct pressure mapping of the Quickie 5R to ensure there were no pressure point issues concerning use of the wheelchair on a full-time basis;

   d. Failing to use reasonable care in recognizing these acts of omissions and commission at subsequent visits to Numotion's Rapid City facility;

  e. Failing to appropriately warn James of the dangers and risks of hazard associated with using the Quickie 5R on a full-time basis as sold, distributed, prepared, inspected, assembled, tested, and/or maintained by Defendants;

  f. Failing to adequately assist James in the safe operation of the Quickie 5R on a full-time basis as sold, distributed, prepared, inspected, assembled, tested, and/or maintained by Defendants.

35. The resulting injuries caused proximately and directly by Defendants' negligent acts of commission and omission caused immediate and severe injuries to James, which nearly cost him his life as well as long term damages, which he will live with the rest of his life.

36. As a result of Defendants' negligent and reckless acts and omissions, James sustained, and will continue to sustain into the future, injuries and damages, including, but not limited to personal injuries which require on-going medical treatment, care, and services; mental anguish; emotional distress; post-traumatic stress; pain and suffering; care-taking expenses; loss of earnings; loss of earning capacity; and loss of enjoyment of life.

37. At all times relevant to the claims in this action, Defendants' employees and/or agents were acting within the course and scope of their employment and/or agency with Defendants. Therefore, pursuant to the doctrine of respondeat superior, Defendants are liable for the negligence of their employees and/or agents.

38. James is entitled to special damages to include an award of his past and future medical expenses, together with prejudgment interest and general damages from Defendants.

### COUNT TWO – NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION

39. James incorporates the allegations in the preceding paragraphs as if fully set forth herein.

40. Defendants owed James a duty to use reasonable care in the hiring, training, supervision, and retention of their employees and/or agents.

41. Defendants breached that duty of reasonable care to James through acts of omission and commission, which collectively and severally, constitute negligence. Defendants' negligent acts and omissions include, but are not limited to: failing to use reasonable care when hiring, training, supervising, and retaining Defendants' employee and/or agents who sold, distributed, prepared, inspected, assembled, tested, and/or maintained the Quickie 5R wheelchair delivered to James by Defendants.

42. Defendants' employees and/or agents were acting within the course and scope of their employment and/or agency with Defendants. Therefore, pursuant to the doctrine of respondeat superior, Defendants are liable for the negligence of their employees and/or agents.

43. As a direct and proximate result of all those negligent acts, James suffered, and continues to suffer, damages to be proven at trial, including, but not limited to personal injuries which require on-going medical treatment, care, and services; mental anguish; emotional distress; post-traumatic stress; pain and suffering; care-taking expenses; loss of earnings; loss of earning capacity; and loss of enjoyment of life.

**COUNT THREE – NEGLIGENT ASSEMBLY AND NEGLIGENT MAINTENANCE**

44. James incorporates the allegations in the preceding paragraphs as if fully set forth herein.

45. Defendants assembled and/or maintained the Quickie 5R wheelchair and/or its component parts which were used by James.

46. Defendants knew or should have known that Numotion customers, such as James, would rely on the Quickie 5R for safe use and mobility. Defendants knew or should have known

that, when providing customers like James with a new wheelchair, if they selected an inadequate wheelchair, failed to assemble the wheelchair properly, or failed to adequately maintain the wheelchair, the Numotion customers such as James who were provided said new wheelchair would be at risk of injury.

47. Defendants were negligent in among other things:

    a. Selecting a wheelchair, the Quickie 5R, which was improper and/or inadequate for its intended use by James;

    b. Failing to assemble and/or maintain the Quickie 5R and/or its component parts in accordance with regulatory and/or industry standards.

48. Defendants' employees and/or agents were acting within the course and scope of their employment and/or agency with Defendants. Therefore, pursuant to the doctrine of respondeat superior, Defendants are liable for the negligence of their employees and/or agents.

49. As a direct and proximate result of all the negligent actions and omissions enumerated above, James suffered, and continues to suffer, damages to be proven at trial, including, but not limited to personal injuries which require on-going medical treatment, care, and services; mental anguish; emotional distress; post-traumatic stress; pain and suffering; care-taking expenses; loss of earnings; loss of earning capacity; and loss of enjoyment of life.

## COUNT FOUR – PRODUCT LIABILITY

50. James incorporates the allegations in the preceding paragraphs as if fully set forth herein.

51. Defendants are engaged in the business of selling, delivering, assembling, inspecting, testing, adjusting, repairing, and/or maintaining wheelchairs such as the Quickie 5R.

52. The wheelchairs Defendants sell, deliver, assemble, inspect, test, adjust, repair,

and/or maintain are expected to reach their users or customers, including James, without substantial change in the condition in which they are sold.

53. Defendants designed, produced, manufactured, constructed, assembled, sold, leased, delivered, inspected, tested, adjusted, repaired, maintained, and/or substantially modified the Quickie 5R wheelchair and/or its component parts through their employees and/or agents in early 2017.

54. The Quickie 5R and/or its component parts were defective and unreasonably dangerous because Defendants failed to provide an adequate warning or instruction associated with James's use of the Quickie 5R on a full-time basis as delivered, assembled, inspected, tested, adjusted, repaired, and/or maintained by Defendants.

55. The Quickie 5R and/or its component parts were defective and unreasonably dangerous because when the Quickie 5R left the control of Defendants, it did not conform to express representations made by Defendants with respect to its character, quality, and/or safety.

56. The Quickie 5R and/or its component parts were defectively sold, assembled, and/or supplied by Defendants and were unreasonably dangerous.

57. Defendants knew, or in the exercise of ordinary care, should have known of the unreasonably dangerous defects with the Quickie 5R and/or its component parts as delivered, assembled, inspected, tested, adjusted, repaired, and/or maintained by Defendants.

58. James used the Quickie 5R and/or its components parts for its intended purpose, assembly, and design.

59. Despite James using the Quickie 5R for its intended purpose, assembly, and design, the defective and unreasonably dangerous Quickie 5R and/or its component parts were the direct and proximate cause of James's injuries and damages to be proven at trial, including,

but not limited to personal injuries which require on-going medical treatment, care, and services; mental anguish; emotional distress; post-traumatic stress; pain and suffering; care-taking expenses; loss of earnings; loss of earning capacity; and loss of enjoyment of life.

### COUNT FIVE – PRODUCT LIABILITY
### (Supplier/Distributor/Assembler)

60. Defendants are engaged in the business of selling, delivering, supplying, distributing, assembling, inspecting, testing, adjusting, repairing, and/or maintaining wheelchairs such as the Quickie 5R.

61. The wheelchairs Defendants sell, deliver, supply, distribute, assemble, inspect, test, adjust, repair, and/or maintain are expected to reach their users or customers, including James, without substantial change in the condition in which they are sold.

62. Defendants are suppliers, distributors, and/or assemblers of the Quickie 5R and/or its component parts. Defendants sold, distributed, leased, prepared, packaged, labeled, and/or otherwise participated in placing the Quickie 5R and/or its component parts in the stream of business and/or installed, repaired, tested, adjusted, assembled, and/or maintained the Quickie 5R and/or its component parts.

63. Defendants were negligent in selling, distributing, leasing, preparing, packaging, labelling, installing, testing, adjusting, assembling, repairing, and/or maintaining the Quickie 5R and/or its component parts.

64. The Quickie 5R and/or its component parts did not conform to representations Defendants made when it left their control.

65. Defendants were further negligent because Defendants failed to provide an adequate warning or instruction to James associated with James's use of the Quickie 5R on a full-time basis as delivered, assembled, inspected, tested, adjusted, repaired, and/or maintained

by Defendants.

66. The Quickie 5R and/or its component parts were defectively sold, assembled, and/or supplied by Defendants and were unreasonably dangerous.

67. Defendants knew, or in the exercise of ordinary care, should have known of the unreasonably dangerous defects with the Quickie 5R and/or its component parts as delivered, assembled, inspected, tested, adjusted, repaired, and/or maintained by Defendants.

68. James used the Quickie 5R and/or its component parts for its intended purpose, assembly, and design.

69. Despite using the Quickie 5R and/or its component parts for its intended purpose, assembly, and design, as a direct and proximate result of Defendants' actions and inactions, James suffered injuries and damages to be proven at trial, including, but not limited to personal injuries which require on-going medical treatment, care, and services; mental anguish; emotional distress; post-traumatic stress; pain and suffering; care-taking expenses; loss of earnings; loss of earning capacity; and loss of enjoyment of life.

### COUNT SIX – PRODUCT LIABILITY
### (Strict Liability)

70. Defendants are engaged in the business of selling, delivering, supplying, distributing, assembling, inspecting, testing, adjusting, repairing, and/or maintaining wheelchairs such as the Quickie 5R.

71. The wheelchairs Defendants sell, deliver, supply, distribute, assemble, inspect, test, adjust, repair, and/or maintain are expected to reach their users or customers, including James, without substantial change in the condition in which they are sold.

72. Defendants are suppliers, distributors, and/or assemblers of the Quickie 5R and/or its component parts. Defendants sold, distributed, leased, prepared, packaged, labeled, and/or

otherwise participated in placing the Quickie 5R and/or its component parts in the stream of business and/or installed, repaired, tested, adjusted, assembled, and/or maintained the Quickie 5R and/or its component parts.

73. The Quickie 5R and/or its component parts did not conform to representations Defendants made when it left their control.

74. Defendants failed to provide an adequate warning or instruction to James associated with James's use of the Quickie 5R on a full-time basis as delivered, assembled, inspected, tested, adjusted, repaired, and/or maintained by Defendants.

75. The Quickie 5R and/or its component parts were defectively sold, assembled, and/or supplied by Defendants and were unreasonably dangerous.

76. Defendants knew, or in the exercise of ordinary care, should have known of the unreasonably dangerous defects with the Quickie 5R and/or its component parts as delivered, assembled, inspected, tested, adjusted, repaired, and/or maintained by Defendants.

77. James used the Quickie 5R and/or its components parts for its intended purpose, assembly, and design.

78. Despite using the Quickie 5R and/or its component parts for its intended purpose, assembly, and design, as a direct and proximate result of his use of the Quickie 5R and/or its component parts, James suffered injuries and damages to be proven at trial, including, but not limited to personal injuries which require on-going medical treatment, care, and services; mental anguish; emotional distress; post-traumatic stress; pain and suffering; care-taking expenses; loss of earnings; loss of earning capacity; and loss of enjoyment of life.

79. As the manufacturers, designers, sellers, suppliers, distributors, and/or assemblers of the Quickie 5R and/or its component parts, Defendants are strictly liable to James for all

injuries and damages James suffered as a result of his use of the Quickie 5R and/or its component parts.

**WHEREFORE,** Plaintiff James E. Vollmer respectfully prays for damages against Defendants as follows:

1. For compensatory, general, special, economic, and noneconomic damages in an amount that the jury deems just and proper under the circumstances;

2. For prejudgment and post-judgment interest;

3. For Plaintiffs' costs and disbursements herein;

4. For exemplary or punitive damages; and

5. For such other and further relief as the court deems just and proper.

### JURY DEMAND

Plaintiffs hereby demand a jury trial on all issues of fact so triable.

Dated this 30th day of December, 2020.

       **LYNN, JACKSON, SHULTZ & LEBRUN, P.C.**

       By: _____
       Ross M. Wright
       Cesar A. Juarez
       Attorneys for Plaintiffs
       110 N Minnesota Ave., Suite 400
       Sioux Falls, SD  57104
       Telephone: 605-332-5999
       Email: rwright@lynnjackson.com
          cjuarez@lynnjackson.com

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
James E. Vollmer

**DEFENDANTS**
United Seating and Mobility dba Numotion and ATG-Colorado dba Numotion

**(b)** County of Residence of First Listed Plaintiff: Meade, South Dakota
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Hartford, Connecticut
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Lynn Jackson Shultz & Lebrun, P.C.
110 N. Minnesota Ave, #400, Sioux Falls, SD 57104
605-332-5999

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 2 U.S. Government Defendant
- [ ] 3 Federal Question *(U.S. Government Not a Party)*
- [X] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [X] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [X] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane | [X] 365 Personal Injury - Product Liability | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | | | [ ] 820 Copyrights | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | | [ ] 830 Patent | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 340 Marine | [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | [ ] 345 Marine Product Liability | | | [ ] 840 Trademark | [ ] 460 Deportation |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards Act | | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 371 Truth in Lending | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 485 Telephone Consumer Protection Act |
| [ ] 195 Contract Product Liability | [ ] 362 Personal Injury - Medical Malpractice | [ ] 380 Other Personal Property Damage | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | | [ ] 385 Property Damage Product Liability | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights | **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 220 Foreclosure | [ ] 441 Voting | [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment | [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 896 Arbitration |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 535 Death Penalty | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | **Other:** | [ ] 462 Naturalization Application | | |
| | [ ] 448 Education | [ ] 540 Mandamus & Other | [ ] 465 Other Immigration Actions | | [ ] 950 Constitutionality of State Statutes |
| | | [ ] 550 Civil Rights | | | |
| | | [ ] 555 Prison Condition | | | |
| | | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 1332(a)(1)
Brief description of cause:
Products liability and negligence claims resulting in serious injuries.

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: [X] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE: 12/30/2020
SIGNATURE OF ATTORNEY OF RECORD: [signature]

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____