UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| JAMES E. VOLLMER,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED SEATING AND MOBILITY, L.L.C., d/b/a NUMOTION and ATG-COLORADO, INC., d/b/a NUMOTION,<br><br>Defendants. | 5:20-CV-05082-KES<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT** |

Defendants, United Seating and Mobility, L.L.C., d/b/a Numotion, and ATG-Colorado, Inc., d/b/a Numotion, (collectively Numotion) move for summary judgment on the three remaining counts in the above-captioned matter. Docket 37; *see* Docket 1 (showing six initial counts); Docket 36 (dismissing counts 4-6). Plaintiff, James E. Vollmer, opposes the motion, arguing that questions of material fact remain for the jury. *See* Docket 47.

## BACKGROUND

### I.  Factual Background

The central facts of this matter are not largely in dispute. But when a factual dispute appears in the record, this court construes the facts in the light most favorable to Vollmer, the non-moving party. *See Lissick v. Andersen Corp.*, 996 F.3d 876, 882 (8th Cir. 2021).

In 2010, Vollmer sustained a catastrophic spinal cord injury that resulted in full paralysis and loss of sensation to his lower body. Docket 39 ¶ 1;

Docket 50 ¶ 1. Following the injury and subsequent rehabilitation therapy, Vollmer purchased a Sunrise Quickie GT (Quickie GT) model wheelchair. Docket 39 ¶ 2; Docket 50 ¶ 2. Vollmer used the Quickie GT for several years until Craig Hospital recommended that he replace it. See Docket 39 ¶ 7; Docket 50 ¶ 7.

On July 20, 2016, Vollmer's physical therapist and a Numotion assistive technology professional (ATP) evaluated Vollmer for a new wheelchair. Docket 39 ¶ 8; Docket 50 ¶ 8. Because Vollmer was satisfied with the Quickie GT, he asked for one similar to it. Docket 39 ¶ 9; Docket 50 ¶ 9. Numotion recommended the Quickie 5R, which had replaced the Quickie GT. Docket 39 ¶ 10; Docket 50 ¶ 10. Numotion also ordered a new 16" x 18" J2 cushion to accompany the Quickie 5R per a prescription from Vollmer's primary care provider. Docket 39 ¶ 12; Docket 50 ¶ 12 (not disputing).

On November 1, 2016, Numotion delivered the Quickie 5R to Vollmer. Docket 39 ¶ 13; Docket 50 ¶ 13. Numotion made some modifications to the Quickie 5R at the time of delivery. Docket 39 ¶ 20; Docket 50 ¶ 20 (disputing efficacy of modifications, not their existence). Craig Hospital later made additional modifications, including an adjustment to the footrest. Docket 39 ¶ 22; Docket 50 ¶ 22. As a result of the footrest modification, the 16" x 18" cushion contacted the back of Vollmer's knee. Docket 39 ¶ 23; Docket 50 ¶ 23 (not disputing alteration caused contact with Vollmer's knee). After the adjustment, Craig Hospital conducted pressure mapping, a technique that provides information about the location of high-pressure areas in patients

without sensation, on Vollmer and prescribed a slightly smaller version of the same cushion, a 16" x 16" J2 Deep Contour cushion. Docket 39 ¶¶ 24, 26; Docket 50 ¶¶ 24, 26; Docket 48-12 at 11-12; *see also* Docket 48-5 at 15-16 (demonstrating use of pressure mapping to detect high-pressure areas); Docket 48-12 at 11-12.

Following a prescription from Craig Hospital, Numotion ordered a 16" x 16" cushion and delivered it on October 24, 2017 to Vollmer. Docket 39 ¶¶ 26, 29; Docket 50 ¶¶ 26, 29. Numotion did not perform pressure mapping or any other assessment of Vollmer and the Quickie 5R when the 16" x 16" cushion was delivered. *See* Docket 48-2 at 7 (Vollmer testifying in his deposition that after picking up the cushion he "just drove away"). After receiving the new cushion, Vollmer began using the Quickie 5R full time, phasing out use of his older model wheelchair. *See id.* at 5. Additionally, sometime after receiving the Quickie 5R, Vollmer purchased a girdle belt, and either Vollmer or Vollmer's parents installed the belt onto the Quickie 5R. Docket 39 ¶¶ 40, 42; Docket 50 ¶¶ 40, 42 (disputing only whether Numotion was contacted about belt purchase).

On January 25, 2018, Vollmer reported a right hip wound to his physician and was referred to wound care. Docket 39 ¶ 34; Docket 50 ¶ 34. The same day, a Numotion service technician serviced the Quickie 5R and recorded his findings. Docket 39 ¶ 35; Docket 50 ¶ 35. The technician did not note at that time whether the seat was stretched, a condition referred to as hammocking. *See* Docket 38-21; Docket 39 ¶ 37; Docket 50 ¶ 37 (not disputing

3

that report omits mention of seat sling); Docket 48-5 at 35 (explaining "a stretched seat sling" is "hammocking"). LifeScape, a competitor to Numotion, inspected the Quickie 5R in October 2018 and found that the seat was hammocked. Docket 39 ¶¶ 47, 50; Docket 50 ¶¶ 47, 50.

As a result of the January 2018 pressure sore, Vollmer reports that he was put on bedrest and suffered complications including surgery. See Docket 1 ¶ 28; Docket 39 ¶ 34 (acknowledging wound).

The parties dispute the cause of the pressure sore, with Vollmer arguing that the injury was caused by Numotion's negligence and Numotion arguing that the injury was due to other factors, such as Vollmer's own actions or the use of other assistive devices. See Docket 39 ¶¶ 46; Docket 50 ¶¶ 46.

## II.   Procedural Background

In his complaint, Vollmer alleges one count of negligence, one count of negligent training, supervision, and retention, one count of negligent assembly and negligent maintenance, and three counts of product liability. Docket 1 at 6-14. Vollmer later filed a motion to dismiss the three counts of product liability. Docket 35. The court granted the motion on January 26, 2023. Docket 36. Vollmer also filed for leave to amend the complaint. Docket 29. The court denied Vollmer's motion, leaving the three remaining counts from the original complaint pending before the court. *See* Docket 55.

On January 31, 2023, Numotion filed a motion for summary judgment on the remaining three counts and on Vollmer's request for punitive damages. Docket 37; Docket 40 at 13-25. Contemporaneously, Numotion moved to

4

exclude the testimony of Vollmer's two expert witnesses in this matter. Dockets 41, 43. Vollmer filed his opposition to all motions. Dockets 46, 47. The court previously considered Numotion's motions to exclude and now turns to its motion for summary judgment. *See* Docket 56.

## DISCUSSION

### I.  Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *Morrow v. United States*, 47 F.4th 700, 704 (8th Cir. 2022) (alteration in original) (quoting *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995)). In reviewing the record, the court views the facts in the light most favorable to the non-moving party. *Lissick*, 996 F.3d at 882. But "[t]he mere existence of a scintilla of evidence in support of the [movant's] position will be insufficient; there must be evidence on which the factfinder could reasonably find for the [movant]." *Turner v. XTO Energy, Inc.*, 989 F.3d 625, 627 (8th Cir. 2021) (cleaned up) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a

whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citation omitted).

## II. Negligence and Negligent Maintenance

"As a federal court sitting in diversity jurisdiction, [the court] appl[ies] the law that the forum state would apply." *Winthrop Res. Corp. v. Stanley Works*, 259 F.3d 901, 904 (8th Cir. 2001). Under South Dakota law, "[t]he three necessary elements of actionable negligence are: (1) A duty on the party of the defendant; (2) a failure to perform that duty; and (3) an injury to the plaintiff resulting from such a failure." *Blaha v. Stuard*, 640 N.W.2d 85, 90 (S.D. 2002) (citing *Stevens v. Wood Sawmill, Inc.*, 426 N.W.2d 13, 14 (S.D. 1998)). "In a suit for professional negligence, the plaintiff must prove that the professional deviated from the required standard of care." *Hanson v. Big Stone Therapies, Inc.*, 916 N.W.2d 151, 158 (S.D. 2018). The parties do not dispute that Vollmer suffered an injury. *See* Dockets 39 ¶¶ 46-47, 54 (acknowledging pressure sores); Docket 50 ¶¶ 46-47, 54 (agreeing that Vollmer suffered pressure sores). Rather, the parties disagree as to what duty is owed to Vollmer by Numotion and to the cause of Vollmer's injury. Docket 40 at 13, 19; Docket 47 at 10, 25.

### A. Duty and Standard of Care

Numotion claims that Vollmer cannot demonstrate the existence of either a duty or a breach of duty on its part and, thus, Counts I and III alleging negligence and negligent maintenance must fail. *See* Docket 40 at 19-24.

6

Vollmer contends that Numotion owed a duty to him due to the risk of foreseeable harm in "ordering, delivering, adjusting, and maintaining the wheelchair and the cushion and other components." Docket 47 at 25. Further, Vollmer argues that Numotion violated that duty when it did not conduct a 19-point inspection, pressure mapping, or other objective testing at every appointment, including the delivery of the 16" x 16" cushion. *Id.* at 10-11, 13, 17-18.

" '[T]he existence of a duty is a question of law to be determined by the court' and not the jury." *Hamilton v. Sommers*, 855 N.W.2d 855, 862 (S.D. 2014) (quoting *Janis v. Nash Finch Co.*, 780 N.W.2d 497, 500 (S.D. 2010)). "For the law to impose a duty, a sufficient relationship must exist between the parties." *Gilbert v. United Nat. Bank*, 436 N.W.2d 23, 27 (S.D. 1989). "Foreseeability may also create a duty." *Braun v. New Hope Twp.*, 646 N.W.2d 737, 740 (S.D. 2002). "For a duty to arise, the risk of harm must generally be foreseeable; the specific nature of the harm need not be foreseeable." *Taco John's of Huron, Inc. v. Bix Produce Company, LLC*, 2008 WL 11450655, at *2 (D.S.D. Sept. 18, 2008) (citing *Limpert v. Bail*, 447 N.W.3d 48, 51 (S.D. 1989)).

By purchasing the wheelchair and later the cushion from Numotion, the court finds that a relationship was created between the parties. *See* Docket 53 at 7 (conceding that "Numotion owed Plaintiff *a* duty"). Further, based on the representations in Numotion's own advertising, pressure injuries were a foreseeable risk of the use of a wheelchair. *See* Docket 48-4 at 9-11. As a matter of law, because this case concerns professional negligence, Numotion

7

was required to exercise professional care and skill in preventing pressure injuries. *See Hamilton*, 855 N.W.2d at 862.

Although the court must determine the "general legal standard of care[,]" "the question of whether the legal standard of care has been fulfilled in a particular case is decided" by the jury. *See id.* (quoting Michael P. Ambrosio & Denis F. McLaughlin, *The Use of Expert Witnesses in Esablishing Liability in Legal Malpractice Cases*, 61 Temp. L. Rev. 1351, 1357 (1988)). "Generally, expert testimony is required in negligence cases when the defendant is held to a standard of care that is outside the common knowledge and experience of ordinary persons." *Hanson*, 916 N.W.2d at 159 (citation omitted).

The parties in this case have presented conflicting evidence, including expert testimony, about what actions would fulfill the standard of professional care and skill. *See* Docket 38-16 at 9-10 (Numotion employee Daniel Ray testifying during depositions that pressure mapping is not always required.); Docket 48-7 at 4 (DME from Numotion competitor testifying during deposition that pressure mapping was appropriate for Vollmer.). Both of Vollmer's experts, Tiffanie Bova and Christian Mongrain, opine that a DME-provider should have conducted an inspection of the 16" x 16" cushion upon delivery, including pressure mapping. *See* Docket 48-8 at 3-4; Docket 48-5 at 17; Docket 48-14 at 3, 6-8. Daniel Ray, a Numotion corporate representative, testified that pressure mapping was only conducted in limited circumstances. *See* Docket 38-16 at 9-10. Similarly, Arlene Klamm, a LifeScape employee, stated that DME-providers "don't do pressure mapping with every new wheelchair cushion[,]" though she

8

would have in Vollmer's case. Docket 38-22 at 3. Because a genuine dispute of material fact exists as to whether Numotion's actions met the standard of care based on this testimony, summary judgment on the basis of a failure to demonstrate duty or breach is denied.

### B. Causation

"Causation is generally a question of fact for the jury except when there can be no difference of opinion in the interpretation of the facts." *Hanson*, 916 N.W.2d at 160 (quoting *Weiss v. Van Norman*, 562 N.W.2d 113, 116 (S.D. 1997)). Numotion asserts that Vollmer has put forth no evidence of causation and, therefore, summary judgment should be granted. *See* Docket 40 at 13-18. Specifically, Numotion argues that there is no evidence that the seat of the Quick 5R was "hammocked" at the time that the 16" x 16" cushion was delivered. *Id.* at 14-15. Because Vollmer alleges that using the 16" x 16" cushion on a hammocked seat contributed to his injuries, Numotion contends that he must show that Numotion's actions could have prevented his use of the cushion on the hammocked seat and, thus, caused his injuries. Docket 40 at 13-14. Vollmer argues that hammocking is only one consequence of Numotion's failure to properly maintain the Quickie 5R and that its larger pattern of negligence caused his injuries. Docket 47 at 10-23.

Reviewing the record in the light most favorable to Vollmer and drawing all reasonable inferences in his favor, the court finds that sufficient evidence exists for a reasonable factfinder to conclude that Numotion's actions caused Vollmer's injury. *See Lissick*, 996 F.3d at 882. Though no hammocking is

9

captured in the report of a 19-point inspection of the Quickie 5R conducted by Numotion on January 25, 2018, the parties contest the interpretation of that report and the quality of the underlying inspection. *See* Docket 38-21 (omitting any comment on seat sling condition from 19-point inspection report); Docket 39 ¶¶ 35-37; Docket 50 ¶¶ 35-37. Further, Mongrain opines that, though the exact moment of seat hammocking is unclear, Numotion could have detected and corrected high pressure points if regular wheelchair inspections were conducted. *See* Docket 38-7 at 7-10. Bova similarly concludes that Numotion's actions caused Vollmer's pressure injury. *See* Docket 48-12 at 14. A jury could conclude from this expert testimony and from circumstantial evidence, such as the timing of Vollmer's injury, that Numotion caused the pressure injury to develop. *See* Dockets 48-5, 48-12; Docket 39 ¶¶ 26, 32, 34; Docket 50 ¶¶ 26, 32, 34 (not disputing timeline of cushion receipt and wound development).

As Numotion highlights, there are multiple potential causes for Vollmer's injuries based on the record before the court. *See* Docket 40 at 17. But something "need not be the only cause of a result" to satisfy the proximate cause standard for negligence. *Hamilton*, 855 N.W.2d at 867. It is the providence of the jury and not the court to make the determination of which cause or combination of causes are in fact responsible for Vollmer's injuries. *See id.* A genuine dispute of material fact exists, and summary judgment is denied as to Counts I and III for negligence.

### III. Negligent Training

Numotion next argues that summary judgment is appropriate in its favor on Vollmer's claim of negligent training, Count II of the complaint.[1] Docket 40 at 23-24. "A negligent training claim suggests that the manner or circumstances of the employee's training by the employer inadequately or defectively *coached, educated, or prepared* its employees for the performance of their job duties." *Kirlin v. Halverson*, 758 N.W.2d 436, 452 (S.D. 2008) (emphasis in original). To prevail on a claim for negligent training, a plaintiff must demonstrate the existence of an underlying tort and that the employer's failure to adequately train, educate, or prepare that employee caused the tort in question. *See Total Auctions and Real Estate, LLC v. South Dakota Dept. of Revenue & Regul.*, 888 N.W.2d 577, 582 (S.D. 2016) ("[A] negligent supervision claim requires that an employee commit an underlying tort.").

Because the court has already found that Vollmer has cited adequate evidence of the underlying tort of negligence, the only question remaining is whether there is evidence in the record of Numotion's failure to coach, educate, or prepare its employees about the prevention of pressure injuries.

---

[1] Vollmer titles Count II as one for "negligent hiring, training, supervision, and retention." Docket 1 at 7. But Numotion focuses its argument for summary judgment only on whether Vollmer has provided adequate evidence of its training practices. Docket 40 at 23-24; Docket 53 at 13-14. Despite still referring to the claim as one for "negligent hiring, training, supervision, and retention," Vollmer appears to adopt this framing for the purposes of his opposition to summary judgment and only cites the record for evidence of Numotion's training practices or lack thereof. *See* Docket 47 at 27-29. Thus, the court considers only negligent training for the purposes of the present motion.

11

### A. Failure to Coach, Educate, or Prepare

Numotion argues that Vollmer has not provided any evidence of Numotion's training practices, nor evidence that those training practices were insufficient. *See* Docket 40 at 23-24; Docket 53 at 13-14. In response, Vollmer cites to testimony from Numotion employee Tony Holso in which Holso describes the procedures and training in place at Numotion.[2] *See* Docket 47 at 27-28; Docket 48-1 at 5, 10-13.

Holso, an ATP for Numotion, stated in his deposition testimony that the "most important" aspect of fitting Vollmer's wheelchair was Vollmer's perception of the Quickie 5R. *Id.* at 5. This is despite the fact that Vollmer has no sensation in his lower body with which to perceive the Quickie 5R. *See* Docket 48-12 at 3, 12. Holso was unable to describe under what circumstances pressure mapping should be conducted beyond stating that it is "a tool" to be used at the discretion of the ATP. Docket 48-1 at 5. He also could not describe any policy or training provided by Numotion as to when pressure mapping was required. *Id.* In short, Holso could not confirm that any pressure injury training was provided by Numotion at all. From this testimony, a reasonable jury could find that Numotion "inadequately or defectively coached, educated, or prepared" its employees. *See Kirlin*, 758 N.W.2d at 452 (emphasis omitted). Summary judgment is thus denied because a genuine dispute of material fact exists as to Count II.

---

[2] Vollmer also cites to Dr. Mongrain's supplemental report. Docket 47 at 28. But because the court excluded Dr. Mongrain's supplemental report in its prior order, the court does not consider that portion of the record. *See* Docket 56.

### IV.  Punitive Damages

The parties agree that Vollmer's negligence and negligent training claims do not entitle him to punitive damages under South Dakota law. *See* Docket 40 at 24-25; Docket 47 at 29, n. 8. Though Vollmer "reserves his right to seek punitive damages if the Court grants his Motion for Leave to Amend the Complaint[,]" the court denied Vollmer's motion to amend on July 19, 2023. Docket 47 at 29, n. 8; Docket 55 at 8. Thus, the court grants summary judgment in favor of Numotion as to Vollmer's claim for punitive damages.

### CONCLUSION

Because a genuine dispute of material fact exists as to Vollmer's claims of negligence and negligent training, the court denies summary judgment on Counts I, II, and III of the complaint. But because punitive damages are not available in ordinary negligence actions under South Dakota law, the court grants summary judgment in favor of Numotion as to Vollmer's claim for punitive damages.

Thus, it is

ORDERED that Numotion's motion (Docket 37) is granted in part and denied in part.

Dated August 29, 2023.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE